IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMERICAN STATES INSURANCE
COMPANY,

                    Plaintiff,

          v.

PIH BEAVERTON LLC,

                    Defendant.

Case No. 3:15-cv-00960-SB

**FINDINGS AND
RECOMMENDATION**

**BECKERMAN, Magistrate Judge.**

Following a jury trial in a prior construction defect suit, PIH Beaverton LLC ("PIH")

obtained a judgment against American States Insurance Company's ("American States") former

insured, Gary Thompson, doing business as Portland Plastering ("Portland Plastering"). American

States then filed this action for declaratory relief against PIH, seeking a declaration that it is not

obligated to pay the judgment obtained by PIH. The parties now cross-move for summary judgment

on the issue of whether American States' commercial general liability ("CGL") policy provides

Page 1 - FINDINGS AND RECOMMENDATION

coverage for the judgment. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §

1332(a). For the reasons that follow, the district judge should deny American States' motion for

summary judgment (ECF No. 14), and deny PIH's cross-motion for summary judgment (ECF No.

18).

**BACKGROUND**

Between August 17, 1994 and August 17, 2000, Portland Plastering was covered by a CGL

policy issued by American States.[1] The CGL policy provides coverage for "bodily injury and

property damage liability" in Coverage A. (Pugh Decl. Ex. A, at 1.) Coverage A provides, in relevant

part, that:

> a.    [American States] will pay those sums that [Portland Plastering] becomes
>       legally obligated to pay as damages because of . . . 'property damage' to
>       which this insurance applies. . . .
>
>           . . . .
>
> b.    This insurance applies to . . . 'property damage' only if:
>
>       (1) The . . . 'property damage' is caused by an 'occurrence' . . . and
>
>       (2) The . . . 'property damage' occurs during the policy period.

(Pugh Decl. Ex. A, at 1.) Coverage A defines "property damage" and an "occurrence" as follows:

> 12.   'Occurrence' means an accident, including continuous or repeated exposure
>       to substantially the same general harmful conditions.
>
>           . . . .
>
> 15.   'Property damage' means:

---

[1] American States issued more than one CGL policy to Portland Plastering during the period of coverage, but the parties represent that, for all intents and purposes, the policies included identical language.

     a.       Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

     b.       Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the 'occurrence' that caused it.

(Pugh Decl. Ex. A, at 10.)

In 2006, PIH purchased the Phoenix Inn Suites hotel in Beaverton, Oregon. Not long after completing the purchase, PIH discovered that the hotel had a number of significant construction defects, including defects stemming from subcontract work performed by Portland Plastering during the period of coverage. PIH brought suit in state court against Portland Plastering and other contractors for negligent construction. In its operative complaint, PIH alleged, *inter alia*, that Portland Plastering negligently installed a stucco cladding system, resulting in "water intrusion and property damage" to the hotel's siding, sheathing, framing, trim, and sheetrock. (Sturm Decl. Ex. 1, at 1, 3, 7-8.) American States tendered a defense to Portland Plastering, subject to a full reservation of rights. The lawsuit proceeded to trial where a jury found in favor of PIH on its negligence claim. Based on the jury's apportionment of fault, judgment was entered against Portland Plastering in the amount of $617,856.60.

American States filed this diversity action against PIH on June 2, 2015, seeking a declaration that it is not obligated to pay the state court judgment rendered against Portland Plastering. The parties' cross-motions for summary judgment followed and were taken under advisement on March 2, 2016.

///

**LEGAL STANDARDS**

"On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation and quotation marks omitted). As the Supreme Court has emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"By its very terms, [the Rule 56(c)] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in the original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the [summary judgment] record, so that no reasonable jury could believe it, a [district] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380 (citation omitted).

**DISCUSSION**

**A.    Applicable Law**

This Court has diversity jurisdiction, so it must apply Oregon law to interpret the CGL policy. *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1224-25 (9th Cir. 1998) (noting that insurers may invoke diversity jurisdiction to bring a declaratory judgment action on a coverage issue); *Alexander*

*Mfg, Inc. Emp. Stock Ownership Plan & Trust v. Ill. Union Ins. Co.*, 560 F.3d 984, 986 (9th Cir. 2009) ("We have diversity jurisdiction, so we must follow Oregon law with respect to the interpretation of the insurance policy.").

The interpretation of an insurance policy presents a legal question under Oregon law, with the objective being to ascertain the intention of the contracting parties "based on the terms and conditions of the insurance policy." *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (Or. 1992) (citations omitted). Oregon courts interpret insurance policies in a manner that gives effect to every provision. *See Cain Petroleum Inc. v. Zurich Am. Ins. Co.*, 224 Or. App. 235, 242 (Or. Ct. App. 2008) ("To qualify as a 'reasonable' construction, a proposed reading of the policy must, at the least, be consistent with the wording; conversely, if a proposed interpretation would require us to disregard any provision of the policy, it is not reasonable, as a matter of law.") (citation omitted).

## B.    American States' Motion for Summary Judgment

American States' summary judgment argument can be summarized as follows: (1) the CGL policy applies only to "property damage" that occurred during the period of coverage; (2) the CGL policy provided coverage from August 17, 1994, through August 17, 2000; (3) Portland Plastering completed its subcontract work on the Phoenix Inn Suites hotel in 1997; but (4) PIH did not purchase the hotel until 2006 and, therefore, PIH did not incur any "property damage" until six years after coverage expired.[2]

---

[2] There is no dispute that property damage occurred during the period of coverage. (*See* Pl.'s Reply Br. at 5, "Defendant argues that there is some evidence of water-related property damage to the hotel beginning in September 1997 and continuing until repairs in 2007, a period that includes some years that [American States'] policy was in force. Again, there is no dispute about that.") (internal citation omitted). As discussed more fully below, there is also no record evidence

Page 5 - FINDINGS AND RECOMMENDATION

American States relies on the Oregon Supreme Court's decisions in *Scott v. Elliot*, 253 Or. 168 (Or. 1969), and *Wallace v. Paulus Bros. Packing Co.*, 191 Or. 564 (Or. 1951), in support of its argument that only the owner of the hotel during the coverage period has the right to recover damages incurred during the coverage period. In *Scott*, the Oregon Supreme Court observed that "[t]he right of action for permanent injuries to land belongs to the party who owns the land at the time the injuries occur." 253 Or. at 180-81. In *Wallace*, the Oregon Supreme Court held that new landlords could not bring an action against a holdover tenant for breach of a covenant to repair, absent an assignment of the claim by the former landlord. *See Wallace*, 191 Or. at 570 ("As grantees, plaintiffs acquired no rights in and to the said cause of action, because it is not alleged nor claimed that the corporation assigned the same to them. Though the covenant to repair runs with the land, a cause of action for a breach thereof does not."). The Court is not persuaded by American States' reliance on *Wallace* and *Scott*, both of which are distinguishable from this case.

*Wallace* concerned the enforcement of a covenant; that is, "[a]n agreement [or] promise of two or more parties that something is done, will be done, or will not be done." *Balvage v. Ryderwood Improvement & Serv. Ass'n, Inc.*, No. 09-5409, 2010 WL 3743635, at *4 (W.D. Wash. Sept. 21, 2010); *Falk v. Amsberry*, 46 Or. App. 565, 570 (Or. Ct. App. 1980) (defining a "covenant" as "any words in a writing under the hand . . . of a person importing an agreement"). Unlike *Wallace*, PIH

---

suggesting that the state court judgment against Portland Plastering was limited only to damage incurred after PIH purchased the property in 2006. (*Compare* Sturm Decl. Ex. 5, at 7, instructing the jury in the underlying construction defect suit that "[a] person's knowledge of defects in a building before that person purchases it does not completely bar that person from recovering for any damages that result from those known defects," *with* Sturm Decl. Ex. 6, at 2, awarding PIH damages in the amount of $617,856.60 ($2,130,540.00 multiplied by 0.29), *and* Hoff Decl. ¶¶ 4-7, indicating that an expert from the underlying construction defect suit, who testified about the nature and extent of the damage to the hotel, believes that the "property damage commenced shortly after completion of the hotel in September 1997").

Page 6 - FINDINGS AND RECOMMENDATION

has not brought an action for breach of an agreement entered into by two other parties. Rather, PIH

attempts to collect on a judgment for continuous and progressive damages resulting from negligence.

*See Newman v. Tualatin Dev. Co., Inc.*, 287 Or. 47, 53 (Or. 1979) ("We know of no reason why the

ambit of liability for negligence in the transfer of real property should be limited by privity of

contract. . . . [I]t was foreseeable that those buying from defendant would in turn be selling to others

and the alleged harm to these nonprivity owners would have been prevented if the defendant used

due care.").

      *Scott* is similarly distinguished. In *Scott*, the Oregon Supreme Court rejected the plaintiff's

damages claim stemming from the defendant's alteration of a stream, stating: "Where the [damage

is] . . . of a permanent nature, and one which . . . the then-owner of the land may [and did] authorize,

the injury is regarded as complete as of the time of the creation of the particular condition, so that

a subsequent [owner] cannot maintain an action therefor." 253 Or. at 181. The *Scott* court added:

"Plaintiff had knowledge of the damage . . . [when] he purchased the property . . . and will not now

be allowed to recover for such damage or have the land restored to its previous condition since he

is presumed to have obtained the benefit of reduced value of the property." *Id*. Unlike *Scott*, nothing

in the record suggests that the prior owner of the Phoenix Inn Suites hotel consented to the actions

that ultimately led to water intrusion and damage, or that PIH was aware of the damage when it

purchased the hotel.

      By its reliance on *Wallace* and *Scott*, American States attempts to invoke the "owner-

claimant rule." That rule provides that "the damaged property must be owned by the claimant at the

time of the property damage in order for the liability to be covered." Scott C. Turner, *Insurance

Coverage of Construction Disputes* § 6:43 (2015). However, "a majority of courts have rejected the

Page 7 - FINDINGS AND RECOMMENDATION

owner-claimant rule, reasoning that 'there is nothing in the insurance clause or the policy definition of 'property damage' which supports such a limitation on coverage." *Bergen v. Grinnell Mut. Reinsurance Co.*, 946 F. Supp. 2d 867, 871 (D. Minn. 2013) (quoting Scott C. Turner, *Insurance Coverage of Construction Disputes* § 6:41 (2012))); *see also id*. at 871-72 ("Does a CGL policy cover . . . property damage occurring during the policy period, if . . . the underlying claimant/plaintiff did not own the damaged property at the time of the property damage[?] Courts are overwhelmingly pro-policyholder on this issue." (quoting 1 Tod Zuckerman & Mark Raskoff, *Environmental Insurance Litigation: Law and Practice* § 6:41 (2012))).

Consistent with the majority approach, the *Bergen* court also rejected the owner-claimant rule, and predicted that the Minnesota Supreme Court—which had not spoken directly on the issue—would do the same. *Id*. at 873. In doing so, the *Bergen* court relied, in part, on the Colorado Court of Appeals' decision in *Village Homes of Colorado, Inc. v. Travelers Casualty & Surety Co.*, 148 P.3d 293 (Colo. App. 2006). Both *Village Homes* and *Bergen* involved homebuilders, with CGL policies identical to American States' policy, that built homes for individuals during the period of coverage and were later sued by subsequent purchasers for defective construction. *See Bergen*, 946 F. Supp. 2d at 872. Like the present case, the insurers denied that coverage existed, arguing that "coverage was not triggered because the homeowners acquired the homes after the expiration of the insurance policy, and . . . [thus] the homeowners did not suffer any actual harm during the policy period." *Id*. at 873 (citation omitted). The *Village Homes* and *Bergen* courts rejected this argument, noting, *inter alia*, that the insurance policies did not expressly require that the eventual claimant own the property at the time the property was damaged to trigger coverage. *Id*.

It does not appear that the Oregon Supreme Court has weighed in on the owner-claimant rule. "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007) (quoting *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)). Where, as here, "the state's highest appellate court has not decided the question presented, then [the court] must predict how the state's highest court would decide the question." *Id*. In doing so, the court must "take state law as it exists without speculating as to future changes in the law." *Id*.

This Court predicts that the Oregon Supreme Court would reject the owner-claimant rule. Oregon law requires that insurance policy language be given its plain and ordinary meaning when the language is unambiguous. *Rainey v. Nw. Nat'l Cas. Co.*, 44 Or. App. 43, 46 (Or. Ct. App. 1980). American States' policy states unambiguously that Portland Plastering was insured for "those sums" that it "becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies," meaning property damage that was caused by an "occurrence" that occurred "during the policy period." (Pugh Decl. Ex. A, at 1.) Nothing in the policy indicates that American States intended to exclude coverage if the claimant did not own the property during the policy period. To the contrary, the CGL policy provides that coverage turns on whether the property was damaged during the period of coverage, not on when the insured's liability is assessed or who owned the property in question during the period of coverage. *See Bergen*, 946 F. Supp. 2d at 873 (reaching a similar conclusion).

The interpretation advanced by American States would force the Court to treat "property damage" as synonymous with "damage to the plaintiff." *Cf. Great Lakes Chem. Corp. v. Int'l*

Page 9 - FINDINGS AND RECOMMENDATION

*Surplus Lines Ins. Co.*, 638 N.E.2d 847, 854 (Ind. Ct. App. 1994) (stating that the insurers "confuse

damage to the [plaintiff] and damage to the [property]"). That interpretation would run afoul of the

mandate from Oregon courts to give unambiguous language its plain and ordinary meaning. *See*

*Bergen*, 946 F. Supp. 2d at 873 ("If it can be shown that property was damaged during the policy

period and that damage was caused by an occurrence, no policy language precludes coverage simply

because the underlying plaintiff did not own the property at that time. The Court simply cannot read

a provision into the policy that does not exist.").

American States' interpretation also runs afoul of the mandate to interpret "policies according

to what [the court] perceive[s] to be the understanding of the ordinary purchaser of insurance." *Botts*

*v. Hartford Accident & Indem. Co.*, 284 Or. 95, 100 (Or. 1978). An insured builder's reasonable

expectation is illustrated by the following example: "[I]f neighboring parcels are damaged and one

changes hands prior to discovery of the damage, the insured will be covered as to one but not the

other. This disparity in coverage would result from events entirely outside the insured's

control. . . . [A] reasonable insured would not expect this outcome." *Hoang v. Assurance Co. of Am.*,

149 P.3d 798, 803-04 (Colo. 2007); *see also O'Neill v. Standard Ins. Co.*, 276 Or. 357, 361 (Or.

1976) (noting that insurance policies are "entitled to a construction as favorable to the insured as in

good conscience will be permitted") (citation omitted).

In sum, the Court concludes that the Oregon Supreme Court would reject the owner-claimant

rule. Accordingly, the Court recommends that the district judge deny American States' motion for

summary judgment.

///

///

C.      **PIH's Cross-Motion for Summary Judgment**

Having rejected American States' attempt to invoke the owner-claimant rule, the Court now turns to PIH's cross-motion for summary judgment. The following issues remain in dispute: (1) whether the judgment awarding damages against Portland Plastering reflects property damage that occurred during the policy period; and (2) if so, the amount of damages that are covered by American States' policy.

In *FountainCourt Homeowners' Association v. FountainCourt Development, LLC*, 264 Or. App. 468 (Or. Ct. App.), *rev. allowed*, 357 Or. 111 (Or. 2014), the Oregon Court of Appeals was confronted with a situation similar to the one presented here. In that case, the plaintiff homeowners' association commenced proceedings against an insurance company to collect the unsatisfied portion of a judgment it had recovered against the insured-subcontractor for negligent construction. *Id*. at 471. On appeal, the insurer argued that, "because some water damage for which the jury awarded damages necessarily occurred either before or after the [CGL] policy term, [the plaintiff] failed to meet its *prima facie* burden of proving coverage under the [CGL] policy[.]" *Id*. at 486. Tracking the language of a policy identical to the one here, the Oregon Court of Appeals stated that the plaintiff "had the *prima facie* burden to prove that the judgment awarding damages . . . reflected amounts that [the subcontractor] was legally obligated to pay as damages because of property damage that occurred during [the] policy period." *Id*. at 486. The Oregon Court of Appeals held that the plaintiff had met its burden:

> [The plaintiff] proceeded against [the subcontractor] on the theory that [the subcontractor's siding] work was defective and that those defects were contributing to the infiltration of rain water and consequential water damage to building components. The jury agreed with [the plaintiff] and found that [the subcontractor's] portion of responsibility for the damage was $485,877.84. [The plaintiff] could not

have prevailed on its claim without proving that [the subcontractor] negligently caused damage to [the plaintiff's] property. Thus, as a result of the jury's verdict, [the subcontractor] became legally obligated to pay damages because of property damage. At the [proceedings below], [the plaintiff's expert] testified that the damage to the buildings from the water intrusion occurred after the construction on each building was completed and that the damage would continue to occur, or progress, until it was repaired. He also testified that every building in the project sustained water damage because of defects in [the subcontractor's] work while the [insurer's] policies were in effect.

> Thus, given the progressive and continuing nature of the harm alleged by [the plaintiff] and found by the jury—water intrusion causing property damage—the award of damages reflected in the judgment against [the subcontractor] *could* represent an award of damages for property damage . . . that occurred *entirely* during the [the insurer's] policy period. Stated in the converse, because of the harm alleged—ongoing and progressive property damage caused by water intrusion resulting from [the subcontractor's] negligence—and the case that was presented to the jury, there is nothing in the record that would *require* a conclusion that any portion of the damages awarded by the jury represents damages for repairing property damage that occurred *outside* of [the insurer's] policy period. [Accordingly, the plaintiff] has . . . satisf[ied] its *prima facie* burden.

*Id*. at 486-87 (first emphasis added) (internal quotation marks omitted). The Oregon Court of

Appeals also held that more than one insurer could potentially be held liable for the same damage

award against the subcontractor:

> In the case of continuing and progressive water damage, the award of damages is not tied to discrete instances of property damage along a time continuum; instead the liability for property damage may be the same in every triggered policy period. That is so because the scope of repair—to replace the damaged structural components and eliminate the water intrusion—does not necessarily change depending on the year in which the damage occurred. Accordingly, given the nature of the injury, it is possible that both [the prior insurer] and [the one who brings this appeal] could be liable for the same damage.

*Id*. at 487-88.

Similar to *FountainCourt*, the Court finds that PIH has met its *prima facie* burden here. As

discussed *supra*, the CGL policy in this case requires American States to pay, on Portland

Page 12 - FINDINGS AND RECOMMENDATION

Plastering's behalf, all sums that Portland Plastering is legally obligated to pay as damages because of property damage "to which this insurance applies." (Pugh Decl. Ex. A, at 1.) The CGL policy provides that the insurance "applies" to property damage "only if" the property damage "occurs during the policy period." (Pugh Decl. Ex. A, at 1.) Thus, PIH has the *prima facie* burden to prove that the state court damage award against Portland Plastering reflected liability for property damage that occurred during American States' policy period. *See FountainCourt*, 264 Or. App. at 486 (same).

In the underlying construction defect suit, PIH proceeded against Portland Plastering on the theory that it negligently installed a synthetic stucco cladding system known as Exterior Insulation Finish System ("EIFS"), which resulted in water intrusion and consequential water damage to the hotel's components. (Sturm Decl. Ex. 1, at 3-5, 7-10.) The jury agreed with PIH and found that Portland Plastering's portion of responsibility for the damage was $617,856.60. (Sturm Decl. Ex. 6, at 1-2.) PIH could not have prevailed on its claim without proving that Portland Plastering negligently caused damage to PIH's property. (*See* Sturm Decl. Ex. 5, at 6-9.) Thus, as a result of the jury's verdict, Portland Plastering became legally obligated to pay damages resulting from property damage.

In addition to the jury verdict, PIH offered in support of its motion the declaration of Eric Hoff ("Hoff"), a senior architect at Structural Waterproofing Consultants, who testified as an expert during the trial on PIH's negligence claim. Hoff agrees that the improperly installed exterior EIFS resulted in $617,856.60 in damage to the hotel, and states that the damage "commenced" shortly after the hotel was completed "in September 1997 and continued progressively each year through at least August 17, 2000." (Hoff Decl. ¶¶ 6-7.) Although Hoff believes that the property damage

"continued to progress until it was repaired in 2007" (Hoff Decl. ¶ 7), the summary judgment record

supports a conclusion that at least a portion of the $617,856.60 in property damage occurred during

the American States' policy period. Accordingly, PIH has met its *prima facie* duty to prove that the

state court judgment reflects damages for property damage that occurred (at least in part) during the

CGL policy period. *See FountainCourt*, 264 Or. App. at 488 ("[W]e reject American Family's theory

that, in order to establish a *prima facie* case for coverage in the context of ongoing and progressive

property damage, FountainCourt was required to exclude the possibility that the jury's verdict

includes damages for repairing property damage that occurred outside the American Family policy

period.").

Since PIH has met its *prima facie* burden of establishing coverage, the burden shifts to

American States to prove that an exclusion in the insurance policy applies. *See Emp'rs Ins. of

Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 509 (Or. Ct. App. 2007) (explaining that, under Oregon

law, "the initial burden of proving coverage is on the insured," while "the insurer has the burden of

proving that the policy excludes coverage") (citation omitted); *FountainCourt*, 264 Or. App. at 480

(same). American States argues that the "your work" exclusion precludes coverage here.[3] That

provision excludes coverage for: "'Property damage' to 'your work' arising out of it or any part of

it and included in the 'products-completed operations hazard.' This exclusion does not apply if the

damaged work or the work out of which the damage arises was performed on your behalf by a

subcontractor." (Pugh Decl. Ex. A, at 3.) Citing the allegations made in the underlying construction

---

[3] The Court overrules PIH's objection to the timeliness of American States' invocation of the "your work" exclusion, which was first raised in American States' consolidated reply and opposition brief. *See generally Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) (explaining that the "district court has considerable latitude in managing the parties' motion practice and enforcing local rules").

defect complaint, as well as the testimony proffered by PIH's expert witness (Hoff), American States

contends that the "your work" exclusion applies in the present case because Portland Plastering's

work (the stucco siding) sustained water damage as a result of its own faulty workmanship. PIH

responds by arguing that "American States has offered no evidence that would create a fact issue

regarding the application of an exclusion from coverage." (Def.'s Reply at 12.)

"The 'your work' exclusion prevents a CGL policy from morphing into a performance bond

covering an insured's own work." *Wilshire Ins. Co. v. RJT Constr., LLC*, 581 F.3d 222, 226 (5th Cir.

2009). Whether the jury in the construction defect action awarded damages for the cost of repairing

or replacing Portland Plastering's own defective work is a disputed material fact. Of note, PIH

sought damages stemming from Portland Plastering's negligent installation of EIFS, which resulted

in, among other things, "cracking of the waterproof lamina or outermost layer of the EIFS

cladding[.]" (Sturm Decl. Ex. 1, at 4; *see also id*. at 7, alleging that the construction defects resulted

in extensive water intrusion and "resulting water damage to the EIFS siding"; Hoff Decl. ¶ 5, stating

the construction defects resulted in damage to the hotel's "siding"). The jury was also instructed to

consider "the reasonable and necessary expenses incurred by [PIH] for repairs to the building" to

determine the amount of damages. (Sturm Decl. Ex. 5, at 8.) In light of the foregoing, there is a

genuine issue of fact as to whether the "your work" exclusion precludes coverage for some portion

of the judgment. Therefore, PIH's cross-motion for summary judgment must be denied.[4] *See Dragas*

*Mgmt. Corp. v. Hanover Ins. Co.*, 798 F. Supp. 2d 758, 765 (E.D. Va. 2011) (rejecting the insured's

---

[4] In light of the potential applicability of the "your work" exclusion, the Court need not reach
the question of whether American States would be responsible for the entire $617,856.60 damage
award pursuant to the "all sums" rule. *See FountainCourt*, 264 Or. App. at 488 n.12 (noting that the
"all sums" rule only applies absent an applicable exclusion); *Bos. Gas Co. v. Century Indem. Co.*,
588 F.3d 20, 22 (1st Cir. 2009) (explaining the "all sums" rule).

Page 15 - FINDINGS AND RECOMMENDATION

argument that the "your work" exclusion was inapplicable, and stating that "summary judgment on the 'your work' exclusion is not proper at this time as a dispute concerning material facts remains"); *see also Am. Home Assurance Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 224 (5th Cir. 2011) ("For summary judgment in favor of the insurers to be appropriate, the insurers must demonstrate the absence of any genuine dispute of material fact as to application of the 'your work' exclusion.").

## CONCLUSION

For the foregoing reasons, the Court recommends that the district judge deny American States' motion for summary judgment (ECF No. 14), and deny PIH's cross-motion for summary judgment (ECF No. 18).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 3rd day of May, 2016.

STACIE F. BECKERMAN
United States Magistrate Judge